No. 23-2193

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

STEVEN CHECCHIA, INDIVIDUALLY AND AS A
REPRESENTATIVE OF THE CLASS,
*Plaintiff-Appellee,*

v.

SOLO FUNDS, INC.
*Defendant-Appellant.*

---

On Appeal from an Order and Memorandum Opinion Dated June 7, 2023
Denying, SoLo Fund, Inc.'s Motion to Compel Arbitration
in the United States District Court for the
Eastern District of Pennsylvania,
No. 2:23-cv-00444

---

## REPLY BRIEF OF APPELLANT SOLO FUNDS, INC.

---

Joseph A. Apatov
McGlinchey Stafford
101 NE 3rd Avenue, Suite 1810
Fort Lauderdale, Florida 33301
(954) 356-2516
(954) 252-3808 (fax)
japatov@mcglinchey.com
Admitted *pro hac*

Andrew K. Stutzman
Christopher A. Reese
Stradley Ronon Stevens & Young, LLP
2005 Market St., Suite 2600
Philadelphia, PA 19103
(215) 564-8000
(215) 564-8120 (fax)
astutzman@stradley.com
creese@stradley.com

*Counsel for SoLo, Funds, Inc., Defendant-Appellant*

# CORPORATE DISCLOSURE STATEMENT AND STATEMENT OF FINANCIAL INTEREST

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and 3d Cir. L.A.R. 26.1 (2011), SoLo Funds, Inc. makes the following disclosure:

1) For non-governmental corporate parties please list all parent corporations:

**None**

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

**None**

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

**None**

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

**Not Applicable.**

*S/* **Joseph A. Apatov**                    Dated: 2/16/2024
*Counsel for SoLo Funds, Inc.*

## <u>TABLE OF CONTENTS</u>

**CORPORATE DISCLOSURE STATEMENT** .................................................. ii

**TABLE OF CONTENTS** ................................................................................ iii

**TABLE OF AUTHORITIES** ........................................................................ iv

**INTRODUCTION** ......................................................................................... 1

    **A.**     **Checchia Had Actual Knowledge of the Terms.** ................................ 6

        **1.**     **SoLo Did not Admit it Lacked Evidence of Actual Knowledge of the Terms.** .......................................... 7

        **2.**     **SoLo Introduced Evidence of Checchia's Actual Knowledge of the Terms.** .......................................... 9

        **3.**     **After Prima Facie Evidence is Presented, the Burden Shifts to the Non-Moving Party.** .................................. 12

        **4.**     **This is not a Browsewrap Case.** ................................... 13

    **B.**     **Checchia had Inquiry Notice of the Terms.** ................................. 15

    **C.**     **The Full Context of the Transaction and Checchia and SoLo's Relationship is Highly Relevant** ................................. 20

    **D.**     **Checchia Erroneously Argues SoLo Waived its Right to Discovery and/or that Discovery and Trial would be Futile.** ......... 24

        **1.**     **Discovery Was not Waived and the District Court did not Deny a Trial.** ...................................................... 25

        **2.**     **Discovery is not Irrelevant.** .......................................... 28

**CONCLUSION** .............................................................................................. 30

**COMBINED CERTIFICATIONS OF COUNSEL** ..................................... 32

**CERTIFICATE OF SERVICE** ................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*American Disabled for Accessible Public Transp. v. Skinner*, 881 F.2d 1184 (3d Cir. 1989) .................................................................................. 25, 26

*Berman v. Freedom Financial Network*, 30 F.4th 849 (9th Cir. 2022).. 4, 14, 20, 24

*Chilutti v. Uber Technologies, Inc.,* 300 A.3d 430 (Pa. 2023) ...............................21

*Cullinane v. Uber Tech*, 893 F.3d 53 (1st Cir. 2018) ..................................... 16, 17

*Jackson v. Amazon.com*, 65 F.4th 1093 (9th Cir. 2023) ..........................................12

*Jin v. Parsons Corp.,* 966 F.3d 821 (D.C. Cir. 2020) .............................................26

*Kirleis v. Dickie McCamey, & Chilcote,* 560 F.3d 156 (3d Cir. 2009) ..................26

*Lopez v. Dave*, No. 22-16915, 2023 WL 8594392 (9th Cir. Dec. 12, 2023).... 21, 22

*Nguyen v. Barnes & Noble, Inc.,* 763 F.3d 1171 (9th Cir. 2014) ...........................29

*Oberstein v. Live Nation Entertainment, Inc.*, 60 F.4th 505 (9th Cir. 2023)...........10

*Polytek Dev. v. Doc Johnson Enterprises*, 532 F.Supp.3d 243 (E.D. Pa. 2021) .....23

*Selden v. Airbnb*, No. 16-cv-00933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016)....29

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) .........................................4

*Simeone v. Simeone*, 581 A.2d 162 (Pa. 1990) .......................................................10

*Stover v. Experian Holdings*, 978 F.3d 1082 (9th Cir. 2020) .................................12

*Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) ..........................................27

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................... 6, 28, 30

Fed. R. Civ. P. 41(a)(2)............................................................................25

NOTICE, Black's Law Dictionary (11th ed. 2019)..................................18

# INTRODUCTION

Checchia's arguments in the Response Brief (the "Response") are largely predicated upon the erroneous position that SoLo must prove Checchia agreed to the **hyperlink** to SoLo's Terms and Conditions (the "Terms") rather than the Terms itself. Response at 10-19. This is incorrect.

The hyperlink is merely one of several ways to access the Terms, it is not the contract. The Terms is the contract. Therefore, the question is whether Checchia agreed to the Terms. Yet, Checchia argues that even if he reviewed the Terms prior to clicking "I agree to the Terms & Conditions," that would be irrelevant unless he knew he was agreeing to the hyperlink. *Id*. at 22, n. 8. This is incorrect and follows from Checchia's attempts to apply browsewrap analysis to a non-browsewrap case.

The Response does not address SoLo's arguments concerning why browsewrap cases are inapplicable. Opening Brief at 27-38. It does not address SoLo's arguments concerning why traditional contractual principles control. *Id.* at 22-25. It does not address whether mobile applications are fundamentally different than websites for purposes of analyzing issues of assent and notice. *Id*. at 32-33. It does not address whether the district court misapplied browsewrap cases to reach its conclusion. *Id*. at 32-54. Naturally then, it also does not distinguish any of the cases

relied upon by SoLo concerning these issues. In fact, of the fifty-two case cites by SoLo, Checchia only cites eight.

Moreover, most of those cases are not analyzed (i.e. Checchia cites a number of cases for the unremarkable propositions that mutual assent is required and this can be established through actual knowledge or inquiry notice). Response at 10-11. Checchia also cites browsewrap cases, arguments concerning burden of proof, and flawed argument concerning why Checchia was not required to engage in any due diligence during the sign-up process or any time thereafter.

Absent from the Response is any explanation for why this Court should not conclude checking the box next to "I agree to the Terms & Conditions" was evidence of actual knowledge of the Terms and agreement to those Terms. Opening Brief at 23, 25. Checchia fails to explain what this affirmative act of assent meant if not that he had actual knowledge that a document titled "Terms & Conditions" existed and he was agreeing to it. Checchia conceded this in the district court, explaining "[a]t best, then, Plaintiff agreed to a document called "SoLo's Terms & Conditions." Doc. 12 at 6, n. 8 (Opposition).

Rather than address what this outward manifestation of assent could have meant other than the obvious, Checchia argues (1) SoLo admitted it was not evidence of actual knowledge (it didn't); and (2) checking the "I agree" box was not evidence

of actual knowledge that he was agreeing to the hyperlink. That is incorrect both because it was readily apparent which hyperlink the "I agree" checkbox referenced, but also because the issue concerns knowledge of the Terms, not the hyperlink.

This Court should reverse because there is unrebutted evidence of actual knowledge. This Court should also reverse because there is unrebutted evidence of inquiry notice. Checchia failed to address most of SoLo's arguments in the Opening Brief concerning why the district court's findings were error, and his response to the remainder is unpersuasive.

The district court made four findings to reach its conclusion that Checchia lacked inquiry notice. Checchia relegates three (proximity of the hyperlink to the "I agree" checkbox, whether the hyperlink has indicia of being hyperlink, and whether the hyperlink was differentiated from the surrounding text), to a couple of footnotes and conclusory sentences. These were critical to the district court's analysis, and Checchia fails to meaningfully address them.

For example, the district court found the hyperlink did not have indicia of being a hyperlink because it lacked underlining and all capital letters. Checchia fails to address SoLo's arguments and authority for why that is incorrect. Instead, Checchia incorporates an example sign-up agreement (the "Sample Page"), stating

that it's format satisfies inquiry notice. Yet, the Sample Page's hyperlinks are not underlined or in all capital letters.

Checchia also does not distinguish any of the cases cited by SoLo in support of its argument that a user is tasked with performing reasonable due diligence. Opening Brief at 23-25. Instead, Checchia argues that mobile application users do not need to engage in any due diligence because all burden related to the transaction is on the mobile application owner.

Checchia effectively seeks to have this court read the word 'inquiry' out of 'inquiry notice.' Checchia fails to cite authority that supports this erroneous standard. In fact, Checchia cites *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444 (2021) for this proposition, despite it being one of the leading cases explaining why the context of the transaction is critical to inquiry notice and the amount of due diligence required. Opening Brief at 54-55. Checchia also cites *Berman* for this proposition despite the concurrence agreeing with *Sellers*. *Id*.; Response at 17.

Checchia fails to distinguish *Sellers* or any of SoLo's other cases that explain the significance of the context of the transaction to inquiry notice. Instead, Checchia argues the context of the transaction is irrelevant, citing a single unpublished decision that neither supports his conclusion nor addresses the reasons SoLo argues the context of the transaction is relevant.

Lastly, Checchia takes the position (erroneously and largely without record support) that SoLo waived its ability to seek discovery and that a trial should not be permitted. However, his entire basis for waiver is that, when asked, Checchia said he himself did not need discovery, and that SoLo did not affirmatively request discovery.

Critically, the district court never found SoLo waived any rights or that a trial was not needed, and this Court should not make such a finding in the first instance. Although Checchia states that the motion to compel was denied with prejudice, that is incorrect. Response at  2.

Even if this Court did consider the issue, Checchia's procedural arguments are incorrect. The reason the district court asked Checchia, not SoLo, whether he needed discovery was because there was a pending dispositive motion. It would be unusual to ask the moving party if it needs discovery. It would also be unusual for a court to then prohibit the moving party from taking discovery if they do not prevail on their dispositive motion.

Checchia also argues that discovery and a trial are both unnecessary because the facts are not in dispute. While the facts introduced by SoLo in the motion to compel are not in dispute (insofar as Checchia failed to offer any evidence to rebut

them), this argument hinges on the erroneous supposition that the motion contains the universe of relevant facts. In addition, the legal standard at trial is different.

Checchia effectively takes the position that if a party does not prevail on a dispositive motion where all reasonable inferences are taken against it (here the district court stated it was applying a 12(b)(6) standard), then no discovery or trial should be permitted. Checchia asks this Court to go beyond the district court's ruling and treat arbitration agreements as less than any other contract.

Therefore, this Court should reverse the district court's judgment and send this matter to binding arbitration or, in the alternative, remand to the district court for further proceedings, including discovery and a trial on the issue of assent.

## A.    **Checchia Had Actual Knowledge of the Terms.**

Checchia argues SoLo waived the issue of actual knowledge by admitting it lacked evidence in support. Response at 11-12, 21-22. However, SoLo merely admitted a lack of evidence regarding whether Checchia clicked on the hyperlink, not whether there was evidence he had actual knowledge of the Terms.

The Response maintains focus on whether Checchia knew he was agreeing to the 'Terms of Service' hyperlink by checking the box next to "I agree to SoLo's Terms & Conditions." Response at 10-19, 22 at n. 8. This mischaracterizes and erroneously frames the issue of actual knowledge which turns on whether there was

evidence that he had knowledge of the **Terms**, not whether he knew he was agreeing to the **hyperlink**. *See, e.g. Nicosia v. Amazon.com*, 834 F.3d 220 (2d Cir. 2016) ("As with paper contracts or shrinkwrap agreements, to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence").

Since Checchia had actual knowledge, the district court's judgment should be reversed.

### 1.   SoLo Did not Admit it Lacked Evidence of Actual Knowledge of the Terms.

Checchia erroneously argues SoLo admitted that there was no evidence he had actual knowledge of the Terms, so this Court should only consider inquiry notice. Response at 11-12, 21-22.

In support, Checchia cites two sections of the oral argument transcript. *See id.* at 22 citing Doc. 29, 5:11-16, 11:25-12:5 (Transcript). However, neither section contains that admission. *See id.* In fact, Checchia acknowledges that SoLo is "arguing that [the click] proves that he had actual knowledge that he was agreeing to the terms of service." *Id.*, 30:15-16.

SoLo merely admitted it had not presented evidence that Checchia actually clicked on the hyperlink to the Terms on the Final Page.[1] *Id.*, 5:11-16, 11:25-12:5 (Transcript). Initially, SoLo merely admitted that "we can't be certain that he definitively clicked on the link." *Id.*, 5:11-16.

Later, the district court asked "do you have any proof that he had actual notice of the terms <u>other than checking the box</u>," and then prior to SoLo answering, rephrased the question as: "[d]o you have proof that he clicked on it?" *Id.*, 11:25-12:5. SoLo's responded: "[w]e don't have evidence the he clicked on it. What I think we have, though, is evidence that he had knowledge of it . . ." *Id.*, 12:4-6. SoLo, then went on to list various ways through which Checchia was notified of and had knowledge of the Terms. *Id.*, 11:17-24.

Checchia also does not suggest SoLo failed to argue it had evidence of actual knowledge in the underlying briefing. SoLo argued checking the box and the surrounding context was evidence of actual knowledge regardless of whether Checchia clicked the hyperlink. Doc. 13 at 2-3 (Reply).

Therefore, SoLo did not admit a lack of evidence of actual knowledge. Not only did SoLo argue that the evidence supported a finding of actual knowledge of

---

[1] JA 28-29.

the Terms, SoLo presented unrebutted prima facie evidence that he had actual knowledge of the Terms.

## 2.    SoLo Introduced Evidence of Checchia's Actual Knowledge of the Terms.

Contrary to Checchia's arguments, the question is not whether Checchia had knowledge of and agreed to the 'Terms of Service' hyperlink, the question is whether Checchia had knowledge of and agreed to the Terms. Yet, the Response almost exclusively focuses on the former. *See* Response at 10 (the section heading addresses assent to the hyperlink, not the Terms). This is because there is unrebutted evidence that Checchia had knowledge of the Terms.

Checchia clicked a button confirming he agrees to the "Terms & Conditions." *Id*. at 4-6, JA 43 (Muñoz Dec. ¶¶ 10-11). This is prima facie evidence of his actual knowledge of the Terms and his agreement to the Terms. In fact, Checchia effectively acknowledged this point in the district court, explaining that "[a]t best, then, [Checchia] agreed to a document called 'SoLo's Terms & Conditions.'" Doc. 12 at 6, n. 8 (Opposition).

"[A]n internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as she has notice of their existence."[2] *Nicosia*, 834 F.3d at 220;[3] *see also Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990).

Since Checchia had actual knowledge of the Terms given that he clicked the checkbox "I Agree to the Terms & Conditions" and the Terms were made available to him, Checchia attempts to focus the analysis on whether SoLo established that Checchia knew he was agreeing to the hyperlink to the Terms instead.

Checchia's own arguments highlights why this is untenable. Checchia argues having actual knowledge of the Terms (by visiting the Terms) and then clicking the checkbox next to "I agree to the Terms & Conditions" "would not have created a genuine issue of fact as to Checchia's actual knowledge" and is therefore irrelevant. Response at 22, n. 8 (visiting the Terms "has no bearing on whether that user knew the 'I agree to SoLo's Terms & Conditions' box referred to that hyperlink.").

---

[2] It could feasibly be relevant for a defense to formation, but this has no bearing on whether prima facie evidence was introduced, and evidence would need to be put forth supporting any defense (which Checchia failed to do).

[3] Checchia cites *Nicosia* for actual or constructive knowledge establishing assent, but fails to address this quote that SoLo cited. Opening Brief at 26; Response at 11. Checchia cites *Oberstein* for the same, but fails to address SoLo's analysis showing that what was deemed conspicuous in *Oberstein* was far less conspicuous than what is at issue here. Opening Brief at 44-46, Response at 11, 14, 23.

Checchia's framework would require this Court to conclude that there is no evidence of actual knowledge of the Terms even if there is evidence he visited the Terms and checked a box indicating he agreed to the Terms. This must be rejected.

A person who accesses a document necessarily has actual knowledge of that document, and affirming "I agree to the Terms & Conditions" evidences actual knowledge of, and agreement to, a document called "Terms & Conditions."[4] In addition, the Terms are clearly identified as such in the first two paragraphs.

The Terms states "[b]y using this mobile application (the "**Platform**"), establishing an account, or applying for a loan through the Platform (collectively, the "**Services**"), you consent to these Terms and Conditions" and "[t]hese Terms and Conditions govern use of the Services." JA 30 (Emphasis in original).

A person presented with those statements has actual knowledge that the document is the Terms being referenced. Moreover, associating the checkbox with the Terms is largely irrelevant for someone like Checchia who established an account and applied for a loan through the platform, thereby consenting to the Terms independent of clicking the checkbox.

---

[4] Checchia has not argued that an ampersand is materially different than the word 'and,' and no reasonable person could be confused by the use of this symbol.

11

**3.    After Prima Facie Evidence is Presented, the Burden Shifts to the Non-Moving Party.**

Checchia argues that SoLo is improperly trying to place the burden on him to disprove actual knowledge, and this "stands the law's notice requirement on its head." Doc 30 at 12. The cases relied upon by Checchia are inapposite. In *Jackson* and *Stover*, the issue concerned binding users to terms regardless of whether notice was provided, based upon a purported duty for them to stay informed of updates. *Jackson v. Amazon.com*, 65 F.4th 1093, 1100 (9th Cir. 2023) ("according to Amazon, the burden was on the Flex drivers to monitor the agreement for changes"); *Stover v. Experian Holdings*, 978 F.3d 1082, 1085 (9th Cir. 2020) ("Stover had no obligation to investigate whether Experian issued new terms without providing notice to her that it had done so").

Here, SoLo presented uncontroverted prima facie evidence of actual knowledge and there are no changed terms at issue. SoLo is merely asking the Court to follow the standard practice for any dispositive motion or trial: if the moving party presents prima facie evidence of the claim, the burden shifts to the other party to challenge the evidence.

Had Checchia submitted a declaration reasonably explaining why he didn't intend to agree to the Terms when his actions affirmatively stated otherwise, there would need to be analysis (and potentially a trial) regarding whether he overcame

this prima facie evidence. For example, evidence of a forged signature could overcome evidence of a signed agreement, but it does not negate that the signed agreement was prima facie evidence of an agreement that shifted the burden to the non-moving party.

Here, Checchia failed to present any evidence to overcome this prima facie evidence that he agreed to the Terms. For example, Checchia did not provide an explanation as to why he believed his act of clicking the "I agree to the Terms & Conditions" checkbox did not mean he was agreeing to the Terms. Similarly, Checchia did not provide evidence that he couldn't locate the Terms (which were made available to him in several ways), was confused by the hyperlink, or to otherwise challenge the meaning of "I agree to the Terms & Conditions."

Checchia continues to offer no explanation as to what significance should be given to his statement "I agree to SoLo's Terms & Conditions" other than the obvious.

### 4.    This is not a Browsewrap Case.

Checchia checked the box affirming "I agree to SoLo's Terms & Conditions." This action is legally significant. This scenario is different than browsewrap cases such as *Berman* where the act of clicking a button titled "Continue" does not carry any legal significance or demonstrate actual knowledge of any agreement. Yet,

Checchia attempts to fit this case into that browsewrap framework of actual versus constructive knowledge. *See* Response at 11-14. Checchia does not address SoLo's arguments for why browsewrap analysis is inapposite, including any of its argument regarding *Berman*.

Here, there is no need to impute meaning into otherwise innocuous conduct. *See Nicosia*, 834 F.3d at 233. Instead, the legal significance of checking the box is explicit, Checchia was "agree[ing] to SoLo's Terms & Conditions." This is not ambiguous. This is affirmative assent, not passive assent.

The browsewrap framework is not germane to agreements like this where the user expressly manifested assent to the Terms by clicking the "I agree" box, there is no need to impute knowledge when there is affirmative assent (even if they could have some other defense to formation). In fact, Checchia fails to cite even one case where a party clicked an "I agree" checkbox and needed to rely upon inquiry notice to establish assent to the referenced document.

Courts turn to inquiry notice when passive conduct that does not explicitly denote agreement to a contract is nonetheless argued to bind the individual to a contract. *See, Berman*, 30 F.4th at 856.

Unlike a browsewrap case where an agreement needs to be inferred from context, here an agreement exists because Checchia said "I agree."

14

**B.**    **Checchia had Inquiry Notice of the Terms.**

Checchia had inquiry notice. The district court erroneously found otherwise because it found the hyperlink (1) was not in close proximity to the "I agree" checkbox; (2) was not underlined or capitalized; (3) was in the same font size and color as the five lines beneath it; and (4) was titled "Terms of Service" instead of "SoLo's Terms of Service" or "SoLo's Terms and Conditions."

Checchia seemingly concedes almost all of the district court's findings and foundation for this conclusion were error. For example, Checchia provides virtually no argument in support of items (1)-(3) above. In addition, the argument he does provide appears to contradict the district court's reasoning.

The Response incorporates the Sample Page, asserting that it would have bound Checchia based upon inquiry notice, yet the Sample Page contains many of the design elements upon which the district court rested it conclusion. *See* Response at 19.

In the Sample Page, the hyperlinks are not underlined or capitalized. *Id*. In addition, the difference in the Sample Page between the font size and color of the hyperlinks compared to the surrounding text is largely the same as the Final Page. *Id*. The hyperlinks in the Sample Page are grouped together in two sets of three

(instead of one set of six). *Id*. SoLo agrees the Sample Page provides sufficient notice to bind users, but it is not the only way (which Checchia acknowledges). *Id*.

Checchia's argument concerning proximity of the hyperlink to the "I agree" box is a footnote stating the district court got it right because there were six lines of text between the two elements. Response at 16. Checchia does not attempt to rebut SoLo's arguments. *See* Opening Brief at 40-44. Also, it is unclear how three lines of text in the Sample Page is fundamentally different than six. What about four?

Support for the second and third findings regarding the appearance of the hyperlinks is also merely a footnote that largely just parrots the Court's finding. Response at 16, n. 5. Checchia does not address SoLo's arguments from the Opening Brief, nor provide an explanation of how the district court's conclusions are correct **and** the Sample Page creates an enforceable agreement.

Further, in the sole case cited by Checchia on this issue, *Cullinane v. Uber Tech.*, 893 F.3d 53 (1st Cir. 2018), the hyperlink was in white font and surrounded by eye catching design elements drawing the user's attention elsewhere.[5] Here, the hyperlink was clearly identified. *See* Opening Brief at 44-51.

---

[5] Reproduced below. *Id.* at 57.



Instead of supporting the district court's analysis and findings, Checchia appears to rest his argument upon two assertions: (1) the "I agree" clause did not include a hyperlink to the Terms or direct the user to the hyperlink; and (2) the hyperlink to the Terms was titled "Terms of Service" instead of "SoLo's Terms & Conditions." Response at 15-19.

The significance of these arguments hinges on Checchia's erroneous contention that he was not required to engage in **any** due diligence before clicking the "I agree to the Terms & Conditions" checkbox and signing up for SoLo's platform. *See id*. at 16-18.

Checchia essentially argues that he bore no duty to understand what he was agreeing to and the obligation was entirely with SoLo. *See id.* at 16-17. Interestingly, Checchia makes this argument while discussing <u>inquiry notice</u>, a term Black's Law Dictionary defines as "[n]otice attributed to a person when the information would lead an ordinarily prudent person to investigate the matter further . . ." NOTICE, Black's Law Dictionary (11th ed. 2019). Yet Checchia argues, without support, that inquiry notice does not require a person 'to investigate the matter further.'

'Inquiry notice' requires some due diligence by the user to 'inquire.' Checchia is incorrect to argue otherwise. The amount of inquiry required varies based upon the context of the transaction, as discussed below, but 'inquiry notice' necessarily always involves a duty to 'inquire.' Otherwise, what is the difference between inquiry notice and actual notice?

Here, the context of the transaction bolsters Checchia's inquiry notice and provides additional support for assent. However, Checchia had inquiry notice even if this had been a fleeting interaction (which it was not).

Checchia attempts to frame the issue as though the level of inquiry needed to determine what he was agreeing to when he affirmed "I agree to the Terms & Conditions" required a herculean effort. *Id*. at 16-17. He argues it would have involved "studying the titles" of the hyperlinks and either guessing based upon the

titles or clicking the hyperlinks (after 'ferreting them out') and guessing which applied based upon its content. *Id*. at 16.

However, "studying the titles" involves reading seventeen words broken down into six titles listed in double spaced lines, consisting of two to four words each. This is not a heavy lift for a reasonable person.

A reasonable person would correctly conclude it references the hyperlink titled 'Terms of Service.' The only remotely similar match is 'SynapseFi's Terms of Service,' but that is clearly SynapseFi's, not SoLo's. A reasonable person would immediately eliminate 'Privacy Policy,' 'E-Sign Disclosure,' 'SynapseFi's Privacy Policy,' or 'Evolve's Deposit Agreement' as possible options. Moreover, even if ambiguity existed, which it did not, the level of inquiry needed to confirm what is referenced would require, at most, clicking on two links (one if he chose correctly initially). That is not an unreasonable amount of 'inquiry,' particularly when entering into a transaction of the nature Checchia entered into here.

A user that engages in this limited inquiry and clicks on the Terms of Service hyperlink would not have faced a demanding task to 'guess which applied based upon its content' as Checchia puts it.

In the first paragraph of the Terms, it references itself as the "Terms and Conditions" and being an agreement with SoLo, and the second paragraph begins

"[t]hese Terms and Conditions." JA 30. Moreover, Checchia has not presented any evidence that he made any inquiries nor that a reasonable person would be confused by the Terms.

Furthermore, the first paragraph of the Terms makes it clear it governs the precise conduct Checchia was engaging in: 'using the mobile application,' 'establishing an account,' or 'applying for a loan.' A reasonable person would be aware the Terms is the agreement that governs those events since it actually says it governs those events.

## C.    The Full Context of the Transaction and Checchia and SoLo's Relationship is Highly Relevant.

SoLo cites many cases in the Opening Brief explaining why the context of the transaction is "critical" to determining whether an internet consumer is on inquiry notice. Doc. 21 at 54-57. This includes the concurrence in *Berman*, a case on which both Checchia and the district court heavily relied. Checchia did not attempt to distinguish any of these cases.

Moreover, SoLo presented evidence of the nature of the platform, the sensitive information provided to complete the sign up process, the nature of the ongoing relationship, and Checchia's use of the platform to secure nineteen loans[6] and repay

---

[6] His first loan was two days after joining the platform.

all but one. Checchia did not submit any evidence to rebut these facts and does not dispute the nature of the relationship in his Response. He merely says it is irrelevant.

Checchia's argument in favor of ignoring the decisions cited by SoLo and the common sense nature of SoLo's argument is simply that SoLo only tried to communicate the existence of the arbitration clause once, citing a single unpublished decision in support.[7] This is factually incorrect as the Terms were communicated multiple times, but more importantly even if it were true it would be insignificant.

The sole case cited by Checchia for this proposition (and the context of the transaction generally) is *Lopez v. Dave*, 2023 WL 8594392 (9th Cir. Dec. 12, 2023).[8] Response at 17-18. However, even *Lopez* acknowledges that the context of the relationship may be relevant. *Id.* at *2 ("Even assuming that context is relevant to the inquiry notice analysis . . ."). The Court merely finds the defendant's arguments inadequate, explaining "[f]or example, Dave relies on the length of the relationship between the parties at issue here, but there is no record evidence of any attempt to

---

[7] Checchia references the "arbitration clause," not the Terms. It appears Checchia is mirroring language from *Lopez* and Checchia is referencing SoLo's communication of the Terms in the Final Page. Response at 17.

[8] Checchia addresses *Chilutti* in a footnote at the end of a quote from *Lopez*. In doing so, Checchia seemingly acknowledging SoLo's argument that *Chilutti* should not be considered and is outside the scope of this appeal given that he addresses it in a footnote without any apparent connection to the argument. Response at 18; Opening Brief at 60-63.

communicate the arbitration provision outside of the initial language on the Dave application sign-up screen." *Id*.

*Lopez* does not address what other arguments were raised by the defendant, any facts related to the relationship, or explain why the arguments that were raised were 'unavailing.' The only thing *Lopez* addresses is that a lengthy relationship does not necessarily mean there is inquiry notice. Therefore, it does nothing to distinguish or address the cases cited by SoLo in support of its argument, and Checchia offers nothing else.

Moreover, even if *Lopez* was relevant, SoLo did communicate the Terms more than once. The uncontroverted evidence is that the Terms are also "accessible from every page on SoLo's website and on the Mobile Application." JA 44 at ¶ 14. Non-compliance with the Terms was also identified in each of the nineteen loan agreements executed by Checchia as grounds for being in default. *See, e.g.,* JA 38, 40, 48 at ¶ 8. Therefore each time Checchia accessed the mobile application or website, such as to secure each of his nineteen loans, the Terms were made available to him and then communicated in the loan agreement.

Checchia never addresses the Terms being available on the mobile application and website. Regarding the reference to the Terms in the loan agreement, Checchia shifts the focus to whether it is sufficient to bind Checchia to the Terms on its own.

Response at 17, n. 6. However, the issue is not whether the references bind Checchia independently, it is whether they provides additional notice to Checchia.

Checchia also argues that the loan agreements never informed him where or how to locate the Terms. *Id*. This is irrelevant. Checchia provided no evidence that he was unable to locate the Terms. Since the Terms were "accessible from every page on SoLo's website and on the Mobile Application," such a contention would be dubious at best, but it is moot since Checchia presented no evidence in support. Moreover, the issue again is whether SoLo communicated the Terms more than once.

Lastly, Checchia argues that the loans merely "state that failure to abide by 'the SoLo Term and Conditions' could constitute default," not that Checchia had agreed to the Terms. *Id*. This too has no bearing on notice. Moreover, since Checchia was on notice that a failure to comply with the Terms would constitute a default under each of the nineteen loans, he Checchia knew he had obligations to comply with the Terms.

Further, assent can be found based upon the parties conduct. *See, e.g. Polytek Dev. v. Doc Johnson Enterprises*, 532 F.Supp.3d 243 (E.D. Pa. 2021) citing Restatement 2d of Contracts § 19(1). Here, Checchia entered into nineteen contracts

that he would be in breach of if he failed to abide by the Terms - this repeated conduct demonstrates that Checchia agreed to the Terms.

In short, the district court erred by not considering the full context of the relationship which would have immediately demonstrated why its reliance upon and application of *Berman* was erroneous and its conclusions fundamentally flawed.

Through the slightest of due diligence, the fact that Checchia was agreeing to the Terms was clear. Therefore Checchia had inquiry notice. Moreover, based upon the significant nature of the relationship Checchia was tasked with more than the slightest of due diligence, and reading a dozen words and clicking on one or two hyperlinks is not unreasonable.

Therefore, Checchia had inquiry notice of the Terms.

### D.    Checchia Erroneously Argues SoLo Waived its Right to Discovery and/or that Discovery and Trial would be Futile.

Checchia argues that SoLo should be denied discovery because any such request was waived and/or discovery will not help resolve any disputed issue of fact. Response at 24-25. Checchia also argues trial is not needed because there are no genuine disputes of fact. Each argument is incorrect.

### 1.    Discovery Was not Waived and the District Court did not Deny a Trial.

Checchia contends that SoLo did not request discovery in (1) its Motion to Compel, (2) its Reply, (3) at oral argument, or (4) at a pretrial conference held while the Motion to Compel was pending, and therefore it waived its right to request discovery. *Id.* at 24.

Checchia does not cite the district court making a finding that there was any such waiver. *See id.* Checchia also does not cite the district court denying SoLo a trial. In fact, Checchia requested that the Motion to Compel Arbitration be denied with prejudice, but the district court's order makes no such ruling. *See* JA 1-25 (Memorandum and Order).

Checchia nonetheless states the motion was denied with prejudice. Response at 2. However, Checchia does not explain where to find the 'with prejudice' ruling and generally a ruling is without prejudice unless stated otherwise. *See, e.g.* Fed. R. Civ. P. 41(a)(2) ("Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.").

Notwithstanding, Checchia asks this Court to decide, in the first instance, that SoLo's actions should be deemed a waiver of its right to pursue discovery and its right to a trial be denied. However, "[i]t is the general rule that a federal appellate court does not consider an issue not passed upon below." *American Disabled for*

*Accessible Public Transp. v. Skinner*, 881 F.2d 1184 (3d Cir. 1989). Therefore, this Court should not consider any argument that SoLo waived the right to pursue discovery or is not entitled to a trial.[9]

Moreover, Checchia's basis for those arguments is incorrect. Regarding discovery, SoLo only learned that Checchia was going to challenge the issue of assent when it received his Opposition. Therefore, the Motion to Compel was filed before SoLo would have had any reason to know discovery concerning assent would be relevant.

Yet, Checchia argues that SoLo failed to request discovery "despite the district court explicitly asking Checchia's counsel whether he was requesting discovery" at oral argument. Response at 24. It is notable that the district court exclusively asked Checchia's counsel whether he was requesting discovery,[10] and never asked SoLo. *See generally* Doc. 29 (Transcript).

Moreover, Checchia cites the pretrial conference and although it is not in the record, Checchia state that "Checchia's counsel emailed both the district court and

---

[9] SoLo raised this issue in arguing that the motion to compel should have been held in abeyance pending trial, and to ensure it was preserved in the event Checchia attempted to raise any ambiguity in the order to suggest that it was ruled upon by the Court. *See, e.g., Jin v. Parsons Corp.*, 966 F.3d 821, 823 (D.C. Cir. 2020).

[10] Also, if a failure to request discovery in the briefings constituted waiver, then why did the Court not deem Checchia to have waived discovery at oral argument?

SoLo's counsel to confirm that Checchia did not require discovery." *Id*. at 6. At no point does Checchia claim SoLo was asked and/or said it did not require discovery. The reason for all of this is because the questions related to discovery concerned resolution of the pending motion, not the issue as a whole.

SoLo's argument is not that discovery is needed to support the motion to compel, SoLo's position is that the motion to compel should have been held in abeyance and the matter proceeded to trial, as discussed below. *See, e.g., Jin,* 966 F.3d at 823. In conjunction with that trial, discovery would be appropriate to develop the issues surrounding assent.

Therefore, Checchia's citation to *Wilson v. Huuuge, Inc.*, 944 F.3d 1212 (9th Cir. 2019) is irrelevant. There, the moving party "stated if the district court planned on ruling against Huuuge, it should first be allowed to engage in limited discovery." *Id*. at 1220. Not only was there a request for discovery that was denied meaning it was not being addressed by the appellate court in the first instance, but it also involved a conditional request related to the motion itself. *See id*. The defendant was not asking to hold the motion in abeyance, but rather if it was going to lose that it be permitted discovery to bolster its position for the motion.

Further, if Checchia's position were accepted then enforcement of an arbitration agreement would be unique in punishing a party for bringing an

unsuccessful dispositive motion by denying it discovery. This is particularly significant when the district court stated it was deciding the motion under the 12(b)(6) standard such that all reasonable inferences were drawn in favor of Checchia. *See* JA 10, Doc. 12 at 3 (Opposition). Such disparate treatment of arbitration agreements would be a violation of the FAA.

## 2.    Discovery is not Irrelevant.

Contrary to Checchia's contention, discovery would help resolve disputed issues of fact. *See* Response at 24. Checchia's position turns on his argument that the making of the arbitration agreement is not at issue here. However, there is clearly a dispute[11] as to whether an agreement was formed, what Checchia meant by "I agree to the Terms & Conditions," what level of due diligence is required based upon the level of inquiry notice Checchia had, his level of sophistication, among many other things. *See, e.g. Kirleis v. Dickie McCamey*, *& Chilcote,* 560 F.3d 156, 161-162 (3d Cir. 2009) (finding "a genuine issue of fact as to the existence of an agreement to arbitrate" where the unrebutted testimony of the plaintiff was that she never saw, signed, nor was provided with the agreement. Defeating summary judgment merely shows an issue for trial exists).

---

[11] SoLo disagrees that there is a genuine dispute insofar as Checchia failed to put forth any evidence. However, Checchia's legal arguments indicate a dispute exists.

Regarding his level of sophistication, Checchia argues his experience with other applications and numerous other lawsuits are irrelevant to assent. His argument is contradicted by cases such as *Selden* which recognize users of online services expect terms to govern, and it follows that experience with online services provides additional notice of this standard practice. Opening Brief at 56. Checchia's cases may support the proposition that experience alone does not create notice, but they do not say it can never be probative. *See, e.g. Nguyen v. Barnes & Noble*, 763 F.3d 1171 (9th Cir. 2014) (explaining there is nothing to suggest the other browsewrap agreements are enforceable or give rise to constructive notice, here there is evidence of his experience with other online lending platforms which further supports the significance of the context of the transaction).

Moreover, Checchia's position ignores facts that could be developed through discovery related to what Checchia knew, among other things. The only way discovery is irrelevant is if SoLo is not permitted to use information developed through discovery to compel arbitration (i.e. at trial), and one of the key reasons Checchia argues SoLo should not be permitted a trial is because of his contention that discovery is irrelevant because the facts are not in dispute. This is circular logic.

Checchia's position also leads to a perverse situation where parties are forced to go through discovery in a forum they dispute being proper, and delay seeking to

compel arbitration in order to ensure they have developed evidence to rebut any undisclosed argument the non-moving party may make.

Checchia did not present evidence that no agreement exists. At best, his argument is that SoLo put forth inadequate evidence to prove an agreement exists as a matter of law. While SoLo did introduce sufficient evidence, if SoLo has not yet presented sufficient evidence to prevail under a 12(b)(6) standard, it should be permitted to do so under the trial standard after having an opportunity to address any purported evidentiary limitations. This matter should be decided on its merits.

## CONCLUSION

This Court should reverse the district court's decision and send this matter to binding arbitration. In the alternative, this Court should reverse and remand for further proceedings, including discovery and a trial.

Respectfully submitted,

s/ *Joseph A. Apatov*
Joseph A. Apatov (Admitted *pro hac*)
Florida Bar. No 93546
McGlinchey Stafford, PLLC
101 NE 3rd Avenue, Suite 1810
Fort Lauderdale, Florida 33301
(954) 356-2516
(954) 252-3808 (fax)
japatov@mcglinchey.com

and

s/ *Andrew K. Stutzman*

Andrew K. Stutzman  (PA ID No. 72922)
Christopher A. Reese (PA ID No. 308939)
Stradley Ronon Stevens & Young, LLP
2005 Market St., Suite 2600
Philadelphia, PA 19103
(215) 564-8000
(215) 564-8120 (fax)
astutzman@stradley.com
creese@stradley.com

**Counsel for Defendant-Appellant**
**SoLo Funds, Inc.**

## <u>COMBINED CERTIFICATIONS OF COUNSEL</u>

1.    <u>Bar Membership:</u> The undersigned certifies that Joseph A. Apatov, Christopher A. Reese, and Andrew K. Stutzman are members of the bar of this Court.

2.    <u>Word Count</u>: This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6499 words.

3.    <u>Typeface</u>:  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14 Time New Roman font.

4.    <u>Identical Compliance of Briefs</u>:  The undersigned certifies that the text of the brief filed electronically is identical to the text in the paper copies of the brief.

5.    <u>Virus Check</u>:  The undersigned certifies that virus detection was run on the electronic file containing the brief and the program detected no virus.

*s/ Joseph A. Apatov*
Joseph A. Apatov
Attorney for Appellant, SoLo Funds, Inc.

Dated: 2/16/2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Third Circuit by using the

appellate CM/ECF system on February 16, 2024. I certify that all participants in the

case will be served via the appellate CM/ECF system and United States First Class

Mail, Postage Prepaid on this 16th day of February, 2024, upon the following:

Kevin J. Abramowicz
Kevin Tucker
Chandler Steiger
Stephanie Moore
East End Trial Group LLC
6901 Lynn Way Suite 215
Pittsburgh, PA 15208
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

s/ <i>Joseph A. Apatov</i>
Joseph A. Apatov
