**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2193
_____

STEVEN CHECCHIA, Individually and as a Representative of the Class,

v.

SOLO FUNDS, INC.
　　　　　　　　Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2:23-cv-00444)
District Judge: Honorable Karen S. Marston
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 20, 2024

Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Filed: August 8, 2024)
_____

OPINION[*]
_____

**RESTREPO**, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

SoLo Funds, Inc. ("SoLo") appeals the denial of its motion to compel arbitration, arguing that the parties had properly formed an agreement to arbitrate the dispute at issue, and alternatively, that SoLo was erroneously denied an opportunity to conduct limited discovery. For the following reasons, we will vacate and remand this matter to the District Court so that the parties may conduct limited discovery on factual questions necessary to determine whether an agreement to arbitrate was properly formed.

# I

SoLo operates both a website and a mobile application, otherwise known as an "app," through which users may obtain cash advances. As the funding for these cash advances comes from other users, SoLo describes its business model as "connect[ing] third-parties seeking to borrow money . . . with third-parties offering to lend money . . . ." App. at 42.

Steven Checchia, individually and on behalf of a purported class, brought several consumer protection claims[1] against SoLo in the Philadelphia County Court of Common Pleas, alleging generally that SoLo misleads users as to the true cost of the cash advances available on its platform.[2] SoLo removed the case to the United States District Court for

---

[1] Specifically, Mr. Checchia brought claims under the Unfair Trade Practices and Consumer Protection Law, the Loan Interest and Protection Law, and the Consumer Discount Company Act.

[2] According to Mr. Checchia, SoLo misleadingly claimed in both its promissory notes and its required Truth in Lending Act disclosures that the advances had a zero-dollar Finance Charge and a zero percent annual percentage rate ("APR"), while in actual fact, users were unable to obtain advances on the platform without paying a "donation" to SoLo

the Eastern District of Pennsylvania, and subsequently moved to compel arbitration. The District Court denied that motion with an opinion and order issued on June 7, 2023, and SoLo initiated this appeal of that order.

SoLo's motion to compel is based on its assertion that, in signing up to use its platform, Mr. Checchia agreed to an arbitration clause that requires him to, upon SoLo's unilateral election, submit any claim arising from his use of the platform to mandatory and binding arbitration. In support of its motion, SoLo submitted, among other things, a declaration from its Director of Product, Eddie Muñoz, screenshots of the sign-up page for its app, and a document Mr. Muñoz identified as a true and correct copy of SoLo's Terms and Conditions.

In his declaration, Mr. Muñoz explained that prior to obtaining advances on SoLo's platform all users are required to complete its sign-up process, and that SoLo's records show that Mr. Checchia completed its sign-up process via the SoLo app. Mr. Muñoz further explained that in order to complete the sign-up process via the SoLo app Mr. Checchia was required to check a box next to the words "I agree to SoLo's Terms & Conditions." App. at 43. The screenshots of SoLo's sign-up page show six lines of text that appear on the

---

and a "tip" to the user that funds the advance. If those costs were to be characterized in terms of APR, rather than as "donations" and "tips," the resulting APRs would be significant. As an example, Mr. Checchia paid a $31.50 "donation" and a $40 "tip" for a $450 cash advance due for repayment in two weeks. Mr. Checchia explained that, given the amount and the repayment term, the "donation" and "tip" for that advance would amount to a 414.25% APR. App. at 2-3.

page above that checkbox, which read (in order): "Terms of Service"; "Privacy Policy"; "E-Sign Disclosure"; "SynapseFi's Terms of Service"; SynapseFi's Privacy Policy"; and "Evolve's Deposit Agreement." App. at 29. Mr. Muñoz explained that those lines of text were hyperlinks, and that the first line, "Terms of Service," was linked to the same document submitted as an exhibit to the declaration, which he identified as SoLo's "Terms and Conditions." That document contains an arbitration clause which allows either party to unilaterally elect mandatory and binding arbitration of any dispute or claim arising from the use of SoLo's platform.[3] Mr. Checchia submitted his own declaration, in support of his opposition, in which he stated that he did not "remember seeing, reading, or being presented [SoLo's Terms]." App. at 49.

SoLo argues that, by checking the checkbox next to the words "I agree to SoLo's Terms & Conditions" and subsequently completing the sign-up process by clicking a prompt with the words "Looks Good, Let's Go," Mr. Checchia formed a valid and enforceable agreement to arbitrate the at-issue claims. This argument rests on the premise that, when Mr. Checchia checked the "I agree to SoLo's Terms & Conditions" box, he had sufficient notice, whether constructive or actual, that he was agreeing to the terms contained in the document accessible via the "Terms of Service" hyperlink.

---

[3] The first page of the document contains a notice which states in bold font and all capital letters: "THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION THAT AUTHORIZES EITHER PARTY TO ELECT MANDATORY AND BINDING ARBITRATION. . ." That provision then follows later in the document under a section titled "Dispute Resolution." App. at 30, 33–34.

In denying the motion to compel, the District Court found that SoLo had failed to carry its burden to establish that Mr. Checchia had notice of the arbitration provision. District Court's decision was premature.

## II[4]

In deciding the motion to compel arbitration the District Court was first required to determine the appropriate standard of review. *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," a motion to compel arbitration may be decided "without the inherent delay of discovery" under the standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 773–74 (brackets omitted). Where, instead, *either* "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to determine that a valid agreement to arbitrate was formed, *or* the party opposing the motion has come forth with evidence beyond a "naked assertion . . . that it did not intend to be bound" by such an agreement, the motion must be decided under the standard applicable to motions for summary judgment under Rule 56. *Id.* at 774. In such cases "a

---

[4] The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(b). We review a denial of a motion to compel arbitration *de novo. Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177 (3d Cir. 2010) ("We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate.").

more deliberate pace is required," and where the motion to compel cannot be resolved on the face of the complaint it "must be denied pending further development of the factual record." *Id.*

Here, the District Court applied the Rule 12(b)(6) standard "because SoLo attached its Terms . . . to its motion to compel arbitration, as well as an affidavit explaining [facts pertinent to its argument] . . . and [Mr.] Checchia failed to respond with additional facts sufficient to place the arbitration provision in issue." App. at 10 (emphasis omitted). This was error. The motion to dismiss standard applies only where the motion can be decided on the face of the complaint, or on documents relied upon by the complaint. Here, the District Court's decision clearly relied upon documents outside of the pleadings, namely the screenshots of the app sign-up screen, the purported Terms & Conditions document, and the declarations submitted by both parties. This is, indeed, a case where "a more deliberate pace is required" and any motion to compel arbitration must be decided under the summary judgment standard. *Guidotti*, 716 F.3d at 774.[5]

---

[5] Additionally, we disagree with the District Court's determination that Mr. Checchia's declaration that he did not recall whether he had seen the Terms & Conditions document was "insufficient to place the arbitration provision in issue and trigger additional discovery." App. at 10. The District Court compared this case to *Matthews v. Gucci*, No. CV 21-434-KSM, 2022 WL 462406 (E.D. Pa. Feb. 15, 2022). In that case, however, the plaintiff did not recall *signing* an agreement that nevertheless bore her signature—a scenario in which her failure to recall was far less probative of whether she had notice of the agreement than Mr. Checchia's declaration here, where there is no other direct evidence in the current record as to whether Mr. Checchia did or did not actually view the document available to him via the "Terms of Service" hyperlink.

Further, we have previously clarified that when a motion to compel arbitration cannot be decided on the face of the complaint, *both* parties must be afforded an opportunity to develop the factual record relevant to the motion through formal discovery. *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329–30 (3d Cir. 2022). "This formal discovery, limited to the question of arbitrability, may then be followed by a renewed motion to compel arbitration wherein both the moving and non-moving parties' arguments can be supported by a developed record." *Id.* at 330. Specifically, we held in *Mabe* that the parties must be afforded an opportunity to conduct discovery *after* the court determines that it must consider the motion under the summary judgment standard.[6] *Id.*

At present, the factual evidence is underdeveloped, and both parties have a right to further develop that evidence via formal discovery before the question of whether an agreement to arbitrate was properly formed can be finally decided under the appropriate legal standard.

### III

We will thus vacate the judgment of the District Court and remand this case for further proceedings in accordance with this opinion.

---

[6] Our decision in *Mabe* makes this sequencing requirement clear and renders Mr. Checchia's citation to non-binding, out-of-circuit precedent for a conflicting principle entirely unpersuasive. SoLo is entitled to discovery *now* that the motion is to be considered under the Rule 56 standard.